**TREEHOUSE LAW, LLP**
Benjamin Heikali (SBN 307466)
Katherine Phillips (SBN 353048)
3130 Wilshire Blvd., Suite 555
Santa Monica, CA 90403
Telephone: (310) 751-5928
bheikali@treehouselaw.com
kphillips@treehouselaw.com

*Attorneys for Plaintiff and the Putative Classes*

[Additional counsel listed on signature page]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTIAN CAMPOS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FINEST VITAMINS, LLC,<br><br>Defendant. | CASE NO.<br><br>**CLASS ACTION COMPLAINT**<br>**DEMAND FOR JURY TRIAL** |

1034532.1

Plaintiff Christian Campos ("Plaintiff"), through his undersigned attorneys, files this Class Action Complaint against Defendant Finest Vitamins, LLC ("FV" or "Defendant"), individually and on behalf of all others similarly situated, and complains and alleges upon personal knowledge as to himself and his own acts and experience, and as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## NATURE OF THE CASE

1.      This class action challenges Defendant's false and deceptive practices in the marketing and sale of its Nutriflair Premium Berberine+ with Ceylon Cinnamon (1200 MG per serving) (the "Product").

2.      Specifically, the principal display panel of the Product prominently promises "1200 MG PER SERVING" (*see* Paragraph 17). Immediately above this representation, the Product also states, "BERBERINE" in the same white font. Together, these representations lead reasonable consumers to believe the Product contains 1200 milligrams of berberine per serving.

3.      However, unbeknownst to consumers, the Product does not contain 1200 milligrams of berberine per serving. Indeed, multiple laboratory tests confirm the Product contains significantly less berberine per serving.

4.      Plaintiff and other consumers reasonably relied on Defendant's deceptive labeling and marketing of the Product, reasonably believing it contains 1200 milligrams of berberine per serving.

5.      Had Plaintiff and Class members been aware that the Product does not contain 1200 milligrams of berberine per serving, Plaintiff and Class members would not have purchased the Product or would have paid significantly less for it. Accordingly, Plaintiff and Class members were financially injured by Defendant's deceptive business practices, and paid a price premium based upon their reliance on Defendant's front label representations.

**JURISDICTION AND VENUE**

6.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A), because there are 100 or more Class members; at least one Class member is a citizen of a state that is diverse from Defendant's citizenship; the matter in controversy exceeds $5 million, exclusive of interest and costs; and none of the exceptions under that subsection apply to this action.

7.     This Court has personal jurisdiction over Defendant because Defendant operates, conducts and engages in substantial business in this judicial district; Defendant caused injury to persons within this state; and a substantial portion of the actions giving rise to the claims took place in this judicial district.

8.     Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b)(2) because this is a judicial district in which a substantial part of the events giving rise to the claims occurred and Plaintiff resides in this judicial district.

**PARTIES**

*Plaintiff Christian Campos*

9.     Plaintiff is a citizen of the United States and a resident of the State of California. On or around April 7, 2025, Plaintiff purchased the Product from Amazon.com while residing in Pico Rivera, California. Based on the "1200 mg per serving" and "Berberine" representations on the front label of the Product, Plaintiff reasonably believed the Product contained 1200 mg of berberine per serving. Had Plaintiff known that this was not the case, he would not have purchased the Product, or would have paid significantly less for it. Therefore, Plaintiff suffered injury in fact and lost money as a result of Defendant's misleading, false, unfair and deceptive practices, as described herein.

10.     Despite Defendant's misrepresentations, Plaintiff would purchase the Product, as labeled, if it contained the represented 1200mg of berberine per serving. Although Plaintiff regularly shops at retailers that carry the Product, absent an

1  injunction of Defendant's deceptive labeling and marketing, he will be unable to rely

2  with confidence on Defendant's labeling and marketing of the Product in the future.

3  Furthermore, while Plaintiff currently believes the Product's labeling and marketing

4  is inaccurate, he lacks personal knowledge as to Defendant's specific business

5  practices, and thus, he will not be able to determine whether the Product truly contains

6  1200mg of berberine per serving in the future. This is particularly true because

7  Plaintiff has no way of confirming how much berberine the Product actually contains.

8  This leaves doubt in his mind as to the possibility that at some point in the future the

9  Product could be made in accordance with its representations. This uncertainty,

10  coupled with his desire to purchase the Product, is an ongoing injury that can and

11  would be rectified by an injunction enjoining Defendant from making the alleged

12  misleading representations. In addition, other Class members will continue to

13  purchase the Product, reasonably but incorrectly, believing that it contains 1200 mg

14  of berberine per serving.

15  ***Defendant Finest Vitamins, LLC***

16      11.    Defendant is a Washington corporation with its principal place of

17  business in Seattle, Washington. Defendant, itself and though its agents,

18  manufacturers, markets, labels, packages, distributes and sells various supplements,

19  including the Nutriflair berberine supplement at issue in this Complaint in the State

20  of California.

21                      **FACTUAL ALLEGATIONS**

22      12.    Berberine is a compound that has been used for thousands of years as a

23  holistic medicine to treat infections, promote wound healing and to remedy

24  gastrointestinal disorders.[1]

25      13.    Today, berberine is sold in herbal dietary supplement form and is

26

27      [1] *In the News: Berberine*, Nat. Center for Complementary Integrative Health

28  ("NIH") (June, 2023), https://www.nccih.nih.gov/health/in-the-news-berberine.

CLASS ACTION COMPLAINT

3

associated with numerous health benefits including as "a remedy for diabetes, high cholesterol levels, high blood pressure, and canker sores, and most recently as a weight loss aid."[2]

14.    In fact, "[m]any studies show that berberine can significantly lower blood sugar levels in people with type 2 diabetes."[3] This reduction in blood sugar is attributed to berberine's ability to decrease insulin resistance, increase glycolysis, decrease sugar production in the liver, slow down the breakdown of carbohydrates and increase beneficial bacteria in your gut.[4]

15.    On social media many consumers share their experiences with berberine supplements as a part of their weight loss journey, which has led to a spike in the popularity of berberine supplements.[5]

16.    The Product at issue in the Complaint is the Nutriflair Premium Berberine+ with Ceylon Cinnamon (1200 MG per serving).

17.    On the front and center of the Product's label, Defendant prominently states "1200 MG PER SERVING." Immediately above this representation, the Product's label also states, "BERBERINE" in the same white font. Together, these front-label representations lead reasonable consumers to believe the Product contains 1200 mg of berberine per serving.

---

[2] *Id.*

[3] Kris Gunnars, *Berberine – A Powerful Supplement With Many Benefits*, healthline (June 13, 2023), https://www.healthline.com/nutrition/berberine-powerful-supplement#blood-sugar-regulation.

[4] *Id.*

[5] NIH *supra* note 1.

18.    Consumers reasonably rely on this dosage information provided on the Product's labeling and marketing, reasonably believing that the Product contains the promised 1200 mg of berberine per serving.

19.    However, unbeknownst to consumers, the Product does not contain the promised dosage of berberine per serving.

20.    Instead, multiple laboratory analyses revealed that each *serving of the Product provides significantly less berberine than advertised*. For example, independent testing conducted in 2023 found each capsule contains only 85 to 111 mg of berberine HCl, meaning *each* serving contains between 170 and 222 mg of

1  berberine HCL.[6] Plaintiff performed his own testing, which confirmed this gross
2  deficiency, finding that each serving of the Product contained only 129.06 mg of
3  berberine per serving. Consumers therefore receive significantly less berberine than
4  advertised.

5      21.  Thus, reasonable consumers are grossly misled by Defendant's front-
6  label representations, believing the Product contains 1200 mg of berberine, when that
7  is simply not the case.

8      22.  For dietary ingredients specifically added to products, such as berberine,
9  the U.S. Food and Drug Administration ("FDA") explicitly requires that the product
10 "must contain 100% of the volume or weight . . . declared on the label."[7]

11     23.  Any shortfall renders a product "misbranded and in violation of the
12 law."[8] Under California's Sherman Food, Drug and Cosmetic Law (the "Sherman
13 Law"), all federal regulations adopted pursuant to the Federal Food, Drug and
14 Cosmetic Act ("FDCA") are incorporated as state regulations.[9] Therefore, this dietary

15

16    [6] In November 2023, the Product was tested by both NOW Foods and the
17 independent laboratory Alkemist Labs using high-performance liquid
   chromatography (HPLC) to measure the actual amount of berberine hydrochloride.
18 HPLC is a precise method that can detect the potency of dietary ingredients. *NOW's
19 Testing Results of Berberine Products*, nowfoods.com (Dec. 2023),
   https://www.nowfoods.com/healthy-living/articles/nows-testing-results-berberine-
20 products-december-2023. These results were corroborated by Plaintiff's testing.

21    [7] "For dietary ingredients that are specifically added, your product must contain
22 100% of the volume or weight that you have declared on the label, with the exception
   of a deviation that is attributable to the analytical method. Products that contain less
23 than this amount of such a dietary ingredient would be misbranded and in violation
   of the law." 21 C.F.R. §§ 101.9(g)(3)-(4); *see also* FDA Dietary Supplement Labeling
24 Guide, IV: Nutrition Labeling. Available at https://bit.ly/3YhDYxh.

25    [8] *Id.*

26    [9] "All food labeling regulations and any amendments to those regulations adopted
27 pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that
   date, are the food labeling regulations of this state." Cal. Health & Safety Code §
28 110100(a).

1  supplement misbranding is also a violation of California state law.

2      24.    Thus, Defendant was required by the FDA and California law to
3  accurately represent the amount of berberine present in the Product.

4      25.    While Plaintiff is not bringing claims to enforce the FDA's rules and
5  regulations, the fact that the FDA requires that supplement products must contain
6  "100% of the volume or weight . . . declared on the label" demonstrates that
7  reasonable consumers can be misled by the challenged representations here.

8      26.    This is because consumers reasonably trust and rely on a supplement's
9  front label representations to accurately state the amount of the desired nutrient
10  present in supplement products.

11     27.    Because the Product does not contain the represented 1200 mg of
12  berberine per serving, reasonable consumers are misled by the Product's labeling and
13  marketing.

14     28.    Defendant also knew, or should have known, that Plaintiff and other
15  consumers, in purchasing the Product, rely on Defendant's labeling and marketing.
16  Nonetheless, Defendant deceptively labels and markets the Product in order to
17  deceive consumers into believing that they are getting considerably more berberine
18  per serving than they really are.

19     29.    Plaintiff and other consumers purchased the Product and paid a premium
20  price as a result of their reliance on the false and deceptive labeling and marketing of
21  the Product.

22     30.    Had Plaintiff and other consumers been aware that the Product does not
23  contain 1200 mg of berberine per serving, they would not have purchased the Product
24  or would have paid significantly less for it.

25     31.    Accordingly, Plaintiff and Class members were injured by Defendant's
26  deceptive business practices.

27              **TOLLING AND ESTOPPEL OF STATUTE OF LIMITATIONS**

28     32.    For years Defendant had actual knowledge that the Product does not

1  contain 1200 mg of berberine per serving.

2      33.    Defendant has a duty to accurately disclose the amount of berberine per
3  serving in its Product. Yet despite its duty and knowledge, Defendant misrepresented
4  that fact.

5      34.    Defendant made, and continues to make, affirmative misrepresentations
6  to consumers to promote the sale of the Product, including that the Product contains
7  1200 mg of berberine per serving.

8      35.    Defendant misrepresented material facts that are important to Plaintiff
9  and Class members in deciding whether to purchase the Product. Defendant's
10 misrepresentation was knowing, and it intended to, and did, deceive reasonable
11 consumers, including Plaintiff and Class members.

12     36.     As a result, Plaintiff and Class members reasonably relied upon
13 Defendant's affirmative misrepresentations of these material facts and suffered injury
14 as a proximate result of that justifiable reliance.

15     37.    The amount of berberine per serving in the formulation, design and/or
16 manufacture of the Product was not reasonably detectible to Plaintiff and Class
17 members.

18     38.    At all times, Defendant actively and intentionally misrepresented the
19 berberine content per serving in its Product and failed to inform Plaintiff and Class
20 members of the actual amount it contains per serving. Plaintiff's and Class members'
21 lack of awareness was thus not attributable to a lack of diligence on their part.

22     39.    The statements, words and acts by Defendant were made for the purpose
23 of misrepresenting the truth that the Product does not contain 1200 mg of berberine
24 per serving.

25     40.    Defendant misrepresented the accurate amount of berberine per serving
26 for the purpose of delaying Plaintiff and Class members from filing a complaint on
27 their causes of action.

28     41.    Due to Defendant's active misrepresentation to Plaintiff and Class

1  members of the true amount of berberine contained in its Product per serving, any and
2  all applicable statutes of limitations that may otherwise be applicable to the
3  allegations are tolled. Moreover, Defendant is estopped from relying on any statute of
4  limitations in light of its active misrepresentation regarding the berberine content per
5  serving in its Product.

6      42.    Furthermore, the causes of action alleged herein did not occur until
7  Plaintiff and Class members discovered the Product indeed did not contain 1200 mg
8  of berberine per serving. Plaintiff and Class members had no realistic ability to discern
9  that the Product did not possess the alleged berberine content per serving until they
10 learned the Product did not actually contain the represented amount. In either event,
11 Plaintiff and Class members were hampered in their ability to discover their causes of
12 action because of Defendant's active misrepresentation regarding the true nature of
13 its Product.

14                    **FED. R. CIV. P. 9(b) ALLEGATIONS**

15     43.    Although Defendant is in the best position to know what content it placed
16 on its Product packaging, on Amazon.com and on its website(s) during the relevant
17 timeframe, and the knowledge it had regarding the berberine content in the Product
18 per serving, to the extent necessary, Plaintiff satisfies the requirements of Rule 9(b)
19 by alleging the following facts with particularity:

20     44.    **WHO**: Defendant made material misrepresentations of fact through its
21 Product packaging, on Amazon.com and on its website(s) regarding the amount of
22 berberine in the Product per serving.

23     45.    **WHAT**: Defendant's conduct was, and continues to be, fraudulent
24 because it misrepresented the amount of berberine in the Product per serving, a fact
25 that Defendant knew, or should have known, to be true, but nonetheless marketed,
26 and continues to market, the Product as containing 1200 mg of berberine per serving.
27 Thus, Defendant's conduct deceived Plaintiff and Class members into believing that
28 the Product contained 1200 mg of berberine per serving. Defendant knew, or should

CLASS ACTION COMPLAINT

have known, this information is material to reasonable consumers—including Plaintiff and Class members—in making their purchasing decisions, yet it continued to pervasively market and label its Product as containing 1200 mg of berberine per serving.

46. **WHEN**: Defendant made material misrepresentations during the putative class periods and at the time Plaintiff and Class members purchased the Product, prior to and at the time Plaintiff and Class members made claims after realizing the Product did not contain 1200 mg per serving and continuously throughout the applicable class periods.

47. **WHERE**: Defendant's marketing message was uniform and pervasive, carried through material misrepresentations on the Product's labeling and packaging, its website(s) and the websites of retailers like Amazon.com.

48. **HOW**: Defendant made material misrepresentations of material facts regarding the Product, including, but not limited to, the amount of berberine per serving in the Product.

49. **WHY**: Defendant made the material misrepresentations detailed herein for the express purpose of inducing Plaintiff, Class members and all reasonable consumers to purchase and/or pay a premium price for the Product, the effect of which was Defendant profited by selling the Product to many thousands of consumers.

50. **INJURY**: Plaintiff and Class members purchased, paid a premium or otherwise paid more for the Product when they otherwise would not have absent Defendant's misrepresentations.

## CLASS DEFINITIONS AND ALLEGATIONS

51. Plaintiff brings this action individually and as a representative of all those similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3), on behalf of himself and the members of the following proposed multi-state class

("Multi-State Consumer Protection Class"):[10]

> During the fullest period allowed by law, all persons who purchased the Product in the state of California or any state with similar laws,[11] within the applicable statute of limitations for personal use and not resale, until the date notice is disseminated.

52.    Plaintiff further brings this action individually and as a representative of all those similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3) on behalf of himself and the members of the following class ("California Class"):

> During the fullest period allowed by law, all persons who purchased the Product in the State of California, within the applicable statute of limitations for personal use and not resale, until the date notice is disseminated.

53.    Members of the Multi-State Consumer Protection Class and California Class are referred to collectively as the "Class members." Specifically excluded from

---

[10] Unless otherwise specified, all references in this Complaint to "Classes" or the "Class" refer collectively to the Multi-State Consumer Protection Class and California Class.

[11] While discovery may alter the following, Plaintiff asserts that the other states with similar consumer fraud laws under the facts of this case include, but are not limited to: Alaska (AS §§ 45.50.471, *et seq.*), Arkansas (Ark. Code §§ 4-88-101, *et seq.*), California (Cal. Bus. & Prof. Code §§ 17200, *et seq.*), Connecticut (Conn. Gen. Stat. §§ 42-110, *et seq*), Delaware (Del. Code tit. 6, §§ 2511, *et seq.*), District of Columbia (D.C. Code §§ 28-3901, *et seq.*), Florida (Fla. Stat. §§ 501.201, *et seq.*), Hawaii (Haw. Rev. Stat. §§ 480-1, *et seq.*), Illinois (815 ICLS §§ 501/1, *et seq.*), Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*), Michigan (Mich. Comp. Law §§ 445.901, *et seq.*), Minnesota (Minn. Stat. §§ 325F.67, *et seq.*), Missouri (Mo. Rev. Stat. §§ 407.010, *et seq.*), New Jersey (N.J. Stat. §§ 56:8-1, *et seq.*), New York (N.Y. Gen. Bus. Law. §§ 349, *et seq.* and §§ 350, *et seq.*), Rhode Island (R.I. Gen. Laws §§ 6-13.1-1, *et seq.*), Vermont (Vt. Stat. tit. 9, §§ 2451, *et seq.*), Washington (Wash. Rev. Code §§ 19.86.010, *et seq.*), and Wisconsin (Wis. Stat. §§ 100.18, *et seq.*). *See Langan v. Johnson & Johnson Consumer Companies, Inc.*, 897 F.3d 88, 96 (2d Cir. 2018); *Mancuso v. RFA Brands, LLC*, 454 F. Supp. 3d 197, 201, 204 (W.D.N.Y. 2020); *see also Benson v. Newell Brands, Inc.*, No. 19 C 6836, 2021 WL 5321510, *9-10 (N.D. Ill. Nov. 16, 2021) (certifying a similar multi-state consumer protection class).

these definitions are: (1) Defendant, any entity in which Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (3) Class Counsel. Plaintiff reserves the right to amend the Class definition, as necessary.

54.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of the claims on a class-wide basis using the same evidence that individual Class members would use to prove those elements in individual actions alleging the same claims.

55.    **Numerosity**: The Class members are so numerous that joinder of all members is impracticable given their numbers and geographic diversity. While the exact number of Class members is presently unknown, it likely consists of thousands of consumers. Nonetheless, the Class is readily identifiable from information and records in the possession of Defendant and the number of Class members can be determined by sales information and other records.

56.    **Typicality**: The claims are typical in that Plaintiff, like all Class members, purchased the Product that was manufactured, marketed, advertised, distributed and sold by Defendant. Furthermore, the factual basis of Defendant's misconduct is common to all Class members because Defendant engaged in systematic behavior that was deliberate, resulting in the same injury to all Class members.

57.    **Commonality**: Common questions of law and fact exist as to all Class members and these questions predominate over questions that may affect only individual Class members. Defendant acted on grounds generally applicable to the Class and such common legal and/or factual questions include, *inter alia*:

        (a)    Whether the Product is mislabeled with representations that the Product contains 1200 mg of berberine per serving when, in fact, the Product does not deliver the promised amount;

(b)     Whether Defendant's practices in labeling and marketing the Product tend to mislead reasonable consumers into believing the Product does contain 1200 mg of berberine per serving;

(c)     Whether Defendant misrepresented material information to Plaintiff and Class members regarding the Product;

(d)     Whether Defendant breached the implied warranty of merchantability relating to the Product;

(e)     Whether Defendant breached express warranties relating to the Product;

(f)     Whether Defendant engaged in unfair, unconscionable or deceptive trade practices by selling and/or marketing the Product with representations that it contains 1200 mg of berberine per serving;

(g)     Whether Defendant engaged in false or misleading advertising by selling and/or marketing the Product with representations that it contains 1200 mg of berberine per serving;

(h)     Whether Plaintiff and Class members are entitled to damages, including compensatory, exemplary and statutory damages, and the amount of such damages;

(i)     Whether Plaintiff and Class members paid a premium for the Product that they would not have paid, *i.e.*, would have paid less for, but for the misleading labeling and marketing of the Product;

(j)     Whether Plaintiff and Class members would have purchased the Product at all but for the misleading labeling and marketing of the Product;

(k)     Whether Plaintiff and other Class members were injured and the proper measure of their losses as a result of those injuries; and

(l)     Whether Plaintiff and other Class members are entitled to injunctive, declaratory or other equitable relief.

58.    **Adequate Representation**: Plaintiff will fairly and adequately protect the interests of the Class and has no interests antagonistic to those of any Class member. Plaintiff retained attorneys experienced in the prosecution of class actions, including consumer and false advertising class actions and Plaintiff intends to prosecute this action vigorously.

59. **Injunctive/Declaratory Relief**: The elements of Rule 23(b)(2) are met. Defendant will continue to commit the unlawful practices alleged herein and Class members will remain at an unreasonable and serious risk of repeated harm. Defendant acted, or refused to act, on grounds that apply generally to the Class, such that final injunctive relief and corresponding declaratory relief is appropriate with respect to the Class as a whole.

60. **Predominance and Superiority**: Plaintiff and Class members all suffered, and will continue to suffer, harm and damages as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, Class members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of Class members' individual claims, it is likely that few Class members could afford to seek legal redress for Defendant's misconduct. Furthermore, without a class action, Class members will continue to incur damages and Defendant's misconduct will continue unabated. Class treatment of common questions of law and fact is a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

61. Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

## COUNT I

### Violation of State Consumer Protection Statutes
**(*By Plaintiff, individually, and on behalf of the Multi-State Consumer Protection Class*)**

62. Plaintiff, individually, and on behalf of the Multi-State Consumer Protection Class, realleges paragraphs 1 through 61 as if fully set forth herein.

CLASS ACTION COMPLAINT
14

63.     Plaintiff and the Multi-State Consumer Protection Class members were injured as a result of Defendant's violations of the state consumer protection statutes listed in paragraph 51, footnote 11, above. These state consumer protection statutes provide a basis for redress to Plaintiff and the Multi-State Consumer Protection Class based on Defendant's fraudulent, deceptive, unfair and unconscionable acts, practices and conduct.

64.     Defendant's conduct, as alleged herein, violates the consumer protection, unfair trade practices and deceptive laws of each of the jurisdictions encompassing the Multi-State Consumer Protection Class.

65.     Defendant's marketing of the Product violates these prohibitions by deceiving consumers into believing that the Product contains 1200 mg of berberine per serving, when it does not.

66.     Defendant engaged in fraudulent and/or deceptive conduct which creates the likelihood of confusion or misunderstanding in violation of applicable law.

67.     Specifically, Defendant advertised, in a misleading and deceptive manner, that the Product contains 1200 mg of berberine per serving. Defendant chose to package, label and market the Product in this way to impact consumer choices, extract price premiums and gain market dominance, as it is aware that all reasonable consumers who purchase the Product would be impacted by, and would reasonably believe, its false and misleading representations.

68.     Defendant intended for Plaintiff and Multi-State Consumer Protection Class members to reasonably rely upon the material misrepresentations concerning the true nature of the Product.

69.     Defendant's misrepresentations and other deceptive conduct were likely to deceive and cause misunderstanding and/or, in fact, did cause Plaintiff and Multi-State Consumer Protection Class members to be deceived about the true nature of the Product.

70.     As a direct and proximate result of Defendant's misrepresentations,

CLASS ACTION COMPLAINT

1  Plaintiff and Multi-State Consumer Protection Class members suffered ascertainable

2  losses.

3       71.    Had they been aware of the true nature of the Product, Plaintiff and

4  Multi-State Consumer Protection Class members either would have paid less for the

5  Product or would not have made the purchases at all.

6       72.    Pursuant to the aforementioned states' unfair and deceptive practices

7  laws, Plaintiff and Multi-State Consumer Protection Class members are entitled to

8  recover compensatory, restitution, punitive and special damages, including, but not

9  limited to treble damages, reasonable attorneys' fees and costs and other injunctive or

10  declaratory relief as deemed appropriate or permitted by relevant law.

11  **COUNT II**

12  **Unjust Enrichment/Quasi-Contract**
(***By Plaintiff, individually, and on behalf of the California Class***)

13

14       73.    Plaintiff, individually, and on behalf of the California Class, realleges

15  paragraphs 1 through 61 as if fully set forth herein.

16       74.    As set forth in this Complaint, Defendant's unfair and unlawful conduct

17  includes, among other things, making materially false and misleading representations

18  about the amount of berberine per serving it its Product. Defendant's acts and business

19  practices offend the established public policy of California, as well as federal law, and

20  there is no public benefit that comes from such false labeling and advertising—only

21  harm.

22       75.    While Plaintiff and Class members were harmed at the time of purchase,

23  Defendant was unjustly enriched by its misrepresentations. As a result of Defendant's

24  unlawful, unfair and fraudulent business practices, Plaintiff and Class members

25  suffered injury.

26       76.    To Defendant's benefit and enrichment, it knowingly realized substantial

27  revenue from selling the Product at the expense of, and to the detriment of, Plaintiff

28  and Class members. Defendant's retention of these benefits violates fundamental

CLASS ACTION COMPLAINT

1   principles of justice, equity and good conscience.

2       77.     Plaintiff and the Class members conferred significant financial benefits

3   and paid substantial compensation to Defendant for the Product, which is not as

4   Defendant represents.

5       78.     Under common law principles of unjust enrichment and quasi-contract,

6   it is inequitable for Defendant to retain the benefits conferred by Plaintiff's and Class

7   members' overpayments.

8       79.     As such, Plaintiff and Class members seek disgorgement of all profits

9   resulting from such overpayments and the establishment of a constructive trust from

10  which Plaintiff and Class members may seek restitution.

11                          **COUNT III**

12              **Breach of California's Implied Warranties Laws**
                (***By Plaintiff, individually, and on behalf of the California Class***)
13

14      80.     Plaintiff, individually, and on behalf of the California Class, realleges

15  paragraphs 1 through 61 as if fully set forth herein.

16  **I.     Implied Warranty of Merchantability**

17      81.     California's implied warranty of merchantability statute states that "a

18  warranty that [] goods shall be merchantable is implied in a contract for their sale if

19  the seller is a merchant with respect to goods of that kind." Cal. Com. Code § 2314(1).

20  "Merchantable" goods must be "fit for the ordinary purposes for which the goods are

21  used." Cal. Com. Code § 2314(2)(c). Moreover, "Merchantable" goods must

22  "[c]onform to the promises or affirmations of fact made on the container or label[.]"

23  Cal. Com. Code § 2314(2)(f).

24      82.     Defendant is, and was, at all relevant times, a merchant with respect to

25  the Product described herein. The Product constitutes a "good" under § 2314.

26      83.     Plaintiff and Class members purchased the Product.

27      84.     As the manufacturer of the Product, Defendant impliedly warranted to

28  Plaintiff and Class members that the Product was of merchantable quality.

85. However, when sold, and at all times thereafter, the Product was not in merchantable condition and was not fit for its ordinary purpose. Moreover, the Product did not conform to the promise and affirmation of fact on the label – that it contained 1200 mg of berberine per serving. Specifically, as described in greater detail herein, the Product does not contain the advertised 1200 mg of berberine per serving. This makes the Product unfit for its ordinary use and purpose, and the Product fails to conform to the promise and affirmation of fact on the label.

86. As a result, Defendant breached the implied warranty of merchantability in connection with the sale and distribution of the Product.

87. Plaintiff's counsel provided Defendant with notice of this breach by mailing a notice letter to Defendant's headquarters on October 23, 2024.

88. Plaintiff and Class members were foreseeable beneficiaries of Defendant's sale of the Product because it is sold to consumers, such as Plaintiff and Class members, through retailers like Amazon.com.

89. Defendant's breach directly caused Plaintiff and Class members harm. Plaintiff and Class members were injured as a direct and proximate result of Defendant's conduct because: (1) they would not have purchased the Product if they had known the truth; (2) they overpaid for the Product sold at a premium price based on Defendant's misrepresentations; and/or (3) the Product they received contained significantly less berberine per serving than the advertised amount and thus worthless for its intended purpose.

## II.    Implied Warranty of Fitness

90. California's implied warranty of fitness statute states that where a seller "has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose." Cal. Com. Code § 2315.

91. Plaintiff and Class members purchased the Product for its intended

1   purpose and use as a dietary supplement.

2      92.    Defendant knew, or had reason to know, that Plaintiff and Class

3   members purchased the Product for this particular purpose. Defendant represents to

4   consumers on the Product's label and in its marketing that the Product is a dietary

5   supplement and is aware that consumers purchase the Product for that intended use.

6      93.    Defendant further markets that the Product contains 1200 mg of

7   berberine per serving.

8      94.    Defendant knew, or had reason to know, that Plaintiff and Class

9   members would justifiably rely on Defendant's marketed judgment and knowledge of

10  dietary supplements in selecting or purchasing products suitable for use as a dietary

11  supplement.

12     95.    Plaintiff and Class members justifiably relied on Defendant's judgment

13  and skill, but the Product is not suitable for its intended purpose because it does not

14  contain 1200 mg of berberine per serving as labeled and advertised.

15     96.    Therefore, Defendant breached its implied warranty of fitness

16  concerning the Product.

17     97.    Plaintiff's counsel provided Defendant with notice of this breach by

18  mailing a notice letter to Defendant's headquarters on October 23, 2024.

19     98.    Plaintiff and Class members were foreseeable beneficiaries of

20  Defendant's sale of the Product because it is sold to consumers, such as Plaintiff and

21  Class members, through retailers like Amazon.com.

22     99.    Defendant's breach directly caused Plaintiff and Class members harm.

23  Plaintiff and Class members were injured as a direct and proximate result of

24  Defendant's conduct because: (1) they would not have purchased the Product if they

25  had known the truth; (2) they overpaid for the Product sold at a premium price based

26  on Defendant's misrepresentations; and/or (3) the Product they received contained

27  significantly less berberine per serving than the advertised amount and thus worthless

28  for its intended purpose.

## <u>COUNT IV</u>

**Breach of California's Express Warranty Laws**
***(By Plaintiff, individually, and on behalf of the California Class)***

100.    Plaintiff, individually, and on behalf of the California Class, realleges paragraphs 1 through 61 as if fully set forth herein.

101.    As alleged in detail above, Defendant makes, markets and sells the Product.

102.    California's express warranty statute provides that "(a) [a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," and "(b) [a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Cal. Com. Code § 2313.

103.    Defendant markets the Product to consumers as a dietary supplement that contains 1200 mg of berberine per serving. Specifically, Defendant's Product label represents that it contains 1200 mg of berberine per serving. These statements are an affirmation of fact about the Product, *i.e.*, a representation that the Product contains 1200 mg of berberine per serving.

104.    However, the Product does not conform to this express representation because the Product does not contain 1200 mg of berberine per serving.

105.    Defendant's warranty was part of the basis of the bargain, and Plaintiff and Class members saw and relied upon as a warranty.

106.    Plaintiff's counsel provided Defendant with notice of this breach by mailing a notice letter to Defendant's headquarters on October 23, 2024.

107.    Defendant's breach directly caused Plaintiff and Class members harm. Plaintiff and Class members were injured as a direct and proximate result of Defendant's conduct because: (1) they would not have purchased the Product if they had known the truth; (2) they overpaid for the Product sold at a premium price based

on Defendant's misrepresentations; and/or (3) the Product they received contained significantly less berberine per serving than the advertised amount and thus less valuable than what they paid for.

## COUNT V

**Violation of the California Consumer Legal Remedies Act ("CLRA")**
**Civil Code §§ 1750, *et seq*.**
**(*By Plaintiff, individually, and on behalf of the California Class*)**
**(*for injunctive relief only*)**

108.  Plaintiff, individually and on behalf of the California Class, realleges paragraphs 1 through 61 as if fully set forth herein.

109.  The conduct described herein took place in the State of California and constitutes unfair methods of competition or deceptive acts or practices in violation of the CLRA, Civil Code §§ 1750, *et seq*.

110.  The CLRA applies to all claims of all California Class members because the conduct, which constitutes violations of the CLRA by Defendant, occurred within the State of California.

111.  Plaintiff and California Class members are "consumers" as defined by Civil Code § 1761(d).

112.  Defendant is a "person" as defined by Civil Code § 1761(c).

113.  The Product qualifies as "goods" as defined by Civil Code § 1761(a).

114.  Plaintiff's and California Class members' purchases of the Product are "transactions" as defined by Civil Code § 1761(e).

115.  As set forth below, the CLRA deems the following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which does result in the sale or lease of goods or services to any consumer as unlawful:

> (a)  "Representing that goods … have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have." Civil Code § 1770(a)(5);
>
> (b)  "Representing that goods … are of a particular standard,

CLASS ACTION COMPLAINT

21

quality, or grade, or that goods are of a particular style or model, if they are of another." Civil Code § 1770(a)(7);

(c)  "Advertising goods or services with intent not to sell them as advertised." Civil Code § 1770(a)(9); and

(d)  "Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not."  Civil Code § 1770(a)(16).

116.  Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Civil Code §§ 1770(a)(5), (a)(7), (a)(9) and (a)(16) by representing, through its Product labeling, advertising and other express representations, that the Product has benefits or characteristics that it does not actually have.

117.  Defendant repeatedly engaged in conduct deemed a violation of the CLRA and made misrepresentations regarding the Product's benefits or characteristics by advertising the Product to contain a false berberine content per serving.

118.  The Product does not contain 1200 mg of berberine per serving, yet Defendant violated the CLRA by falsely representing that the Product does provide that amount.

119.  In addition, Defendant violated the CLRA when it advertised the Product with the intent to sell, while knowing the Product does not possess the represented berberine content per serving.

120.  Defendant's deceptive practices were particularly designed to induce Plaintiff and California Class members to purchase, or otherwise acquire, the Product.

121.  Defendant engaged in uniform marketing efforts to reach California Class members to persuade them to purchase and use the Product. Defendant's labeling, packaging, advertising and marketing contain false and misleading statements regarding the berberine content in the Product per serving.

122.  In their purchase of the Product, Plaintiff and California Class members

1  relied on Defendant's representations of material facts.

2      123.  Plaintiff and other California Class members were financially injured in

3  that they paid more for the Product than they otherwise would have had they known

4  the truth about it.

5      124.  Accordingly, pursuant to Civil Code § 1780(a)(2), Plaintiff, on behalf of

6  himself and all other members of the subclass, seeks injunctive relief, including an

7  order to enjoin Defendant from continuing its deceptive advertising and sale practices.

8      125.  Pursuant to Cal. Civ. Code § 1782, On July 8, 2025, Plaintiff notified

9  Defendant in writing by certified mail of its violations of § 1770 described above and

10  demanded that it rectify its conduct on a class-wide basis. If Defendant does not agree

11  to do so within 30 days of receiving that notice, Plaintiff will amend this Complaint

12  to seek actual, punitive, and statutory damages, as appropriate.

13      126.  Pursuant to Cal. Civ. Code § 1780(d), a declaration of venue is attached

14  to this Complaint.

15  

**<u>COUNT VI</u>**

16
17  

**Violations of the California Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(*By Plaintiff, individually, and on behalf of the California Class*)**

18
19      127.  Plaintiff, individually, and on behalf of the California Class, realleges

20  paragraphs 1 through 61 as if fully set forth herein.

21      128.  Defendant is a "person" as defined by California Business and

22  Professions Code § 17201.

23      129.  Plaintiff and California Class members suffered an injury by virtue of

24  buying a Product that Defendant misrepresented. Had Plaintiff and California Class

25  members known that Defendant materially misrepresented the true berberine content

26  contained in the Product per serving, they would not have purchased, or would have

27  paid less for, the Product.

28      130.  Defendant's conduct, as alleged herein, violates the laws and public

1    polices of California and the federal government including the CLRA, the FAL, 21

2    C.F.R. § 101.9 and California's Sherman Law.

3       131.   There is no benefit to consumers or competition in allowing Defendant

4    to deceptively label, market and advertise the Product.

5       132.   Plaintiff and California Class members had no way of reasonably

6    knowing that the Product was deceptively packaged, marketed and advertised.

7    Therefore, Plaintiff and California Class members could not reasonably avoid the

8    harm they suffered.

9       133.   Specifically, Defendant marketed, labeled and represented the Product

10    as containing 1200 mg of berberine per serving when, in fact, it does not.

11       134.   The gravity of the harm suffered by Plaintiff and California Class

12    members outweighs any legitimate justification, motive or reason for packaging,

13    marketing, advertising and labeling the Product in a deceptive and misleading manner.

14    Accordingly, Defendant's actions not only offend the established public policies set

15    forth in federal regulations, but its conduct is also immoral, unethical and

16    unscrupulous.

17       135.   Defendant's dissemination of misleading and deceptive statements to

18    consumers throughout the State of California did, and will continue to, deceive

19    reasonable consumers, like Plaintiff and California Class members, by obfuscating

20    the true nature of the Product. Defendant's conduct is thus a violation of Cal. Bus. &

21    Prof. Code §§ 17500, *et seq*.

22       136.   Plaintiff and California Class members do not have an adequate remedy

23    at law because damages alone will not stop Defendant's unlawful sale of the Product,

24    or its misrepresentations. Damages will only address past injuries suffered by Plaintiff

25    and California Class members, but Defendant continues to market the Product without

26    disclosing the true nature and berberine content per serving. Therefore, only

27    injunctive relief can prevent future harm.

28       137.   Additionally, Plaintiff seeks restitution if monetary damages are not

available. Restitution under the UCL can be awarded in situations where the entitlement of damages may prove difficult. *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163, 177 (2000) (Restitution under the UCL can be awarded "even absent individualized proof that the claimant lacked knowledge of the overcharge when the transaction occurred."); *Gutierrez v. Wells Fargo Bank, NA*, 589 F. App'x 824, 827 (9th Cir. 2014) (same); *Caro v. Procter & Gamble Co.*, 18 Cal. App. 4th 644, 661 (1993) ("In a suit arising under Bus. & Prof. Code, §§ 17200, *et seq*. (unfair competition), the court is empowered to grant equitable relief, including restitution in favor of absent persons, without certifying a class action.").

138.   But even if damages were available, such relief would not be adequate to address the injury suffered by Plaintiff and California Class members. Unlike damages, the Court's discretion in fashioning equitable relief is very broad. *Cortez*, 23 Cal.4th at 180. Thus, restitution would allow recovery even when normal consideration associated with damages would not. *See*, *e.g.*, *Fladeboe v. Am. Isuzu Motors Inc.*, 150 Cal. App. 4th 42, 68 (2007), *as modified* (Apr. 24, 2007) (noting that restitution is available even in situations where damages may not be available).

139.   Plaintiff and California Class members seek all monetary and nonmonetary relief allowed by law, including restitution stemming from Defendant's unfair, unlawful and fraudulent business practices; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief.

**I.    "Unfair" Prong**

140.   **Unfair Standard.** Under the UCL, a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of S. Cal.*, 142 Cal. App. 4th 1394, 1403 (2006).

141.   **Injury.** Defendant's practice of labeling the Product as containing 1200 mg of berberine per serving, despite the Product containing much less berberine per

serving, provides no benefit to consumers; rather, it harms them. By misrepresenting this material information, Defendant causes consumers to purchase a Product that fails to meet their reasonable expectations, overpay for a Product they believed was fit for its marketed use and receive a Product that contains less berberine than what they were led to believe. Consumers are deprived of the ability to make informed decisions and cannot avoid the injuries caused by Defendant's deceptive labeling and advertising. Accordingly, the injuries resulting from Defendant's deceptive conduct far outweigh any purported benefits.

142. **Balancing Test.** Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code Section 17200. They "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012).

143. **No Utility.** Here, Defendant's conduct of labeling the Product as containing 1200 mg of berberine per serving, despite the Product containing much less berberine per serving, has no legitimate utility and financially harms consumers. Any potential utility from Defendant's conduct is vastly outweighed by the gravity of the harm caused to consumers, who are unknowingly receiving much less berberine per serving and unjustly pay a premium for Products that fail to meet their reasonable expectations of berberine content.

144. **Legislative Declared Policy.** Some courts require that "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc.*, 504 F.3d 718, 735 (9th Cir. 2007). Defendant's use of the 1200 mg of berberine per serving representation despite the fact that the Product contains much less berberine per serving, violates California Civil Code sections 1572 (actual fraud), 1573 (constructive fraud), 1709-1710 (fraudulent deceit) and 1711 (deceit upon the public), as set forth herein.

145. **Unfair Conduct.** Defendant's labeling and advertising of the Product,

as alleged herein, is deceptive, misleading and unreasonable, and constitutes unfair conduct. Defendant knew, or should have known, of its unfair conduct. Defendant representation of the per serving berberine content of the Product despite the Product containing much less than the marketed amount, constitutes an unfair business practice within the meaning of California Business and Professions Code Section 17200.

146. **Reasonably Available Alternatives.** Reasonably available alternatives existed that would have allowed Defendant to further its legitimate business interests without engaging in the deceptive conduct described herein. Defendant could have refrained from labeling the Product as containing 1200 mg of berberine per serving and alternatively marketed the true berberine content per serving. This reasonable alternative would allow Defendant to market its Product truthfully while protecting consumers from consuming a product that has much less berberine per serving than is marketed.

147. **Defendant's Wrongful Conduct**. All of the conduct alleged herein occurs, and continues to occur, in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

148. **Injunction.** Pursuant to Business and Professions Code Section 17203, Plaintiff and the California Class seek an order from this Court enjoining Defendant from continuing its practice of labeling the Product as containing 1200 mg of berberine per serving. Plaintiff and the California Class request that the Court prohibit Defendant from engaging in these deceptive practices to prevent further harm to consumers.

149. **Causation/Damages.** Plaintiff and the California Class suffered injury in fact, lost money and purchased the Product that contains much less berberine per serving than they paid for as a result of Defendant's unfair conduct. Plaintiff and the California Class paid an unwarranted premium for the Product, believing it was fit for

its marketed purpose and contained the advertised berberine content per serving. Specifically, Plaintiff and the California Class paid for a Product they reasonably believed contained 1200 mg of berberine per serving. Had they known the truth, that the Product contains much less than 1200 mg of berberine per serving, Plaintiff and the California Class would not have purchased the Product, or would have paid substantially less for it. Accordingly, Plaintiff and the California Class seek damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

**II.    "Fraudulent" Prong**

150.    **Fraud Standard.** The UCL considers conduct fraudulent (and prohibits said conduct) if it is likely to deceive members of the public. *Bank of the W. v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992).

151.    **Fraudulent Berberine Content Claim.** Defendant employed the 1200 mg of berberine per serving claim, with the intent to sell the Product to consumers, including Plaintiff and the California Class. The 1200 mg of berberine per serving claim is deceptive, and Defendant knew, or should have known, of its deceptive nature. By affirmatively representing the Product as containing 1200 mg of berberine per serving, despite the fact the Product did not contain 1200 mg of berberine per serving, Defendant misleads consumers into believing the Product is fit for its intended use. The affirmative misrepresentations are likely to mislead reasonable consumers, as they pertain to fitness for the marketed use, which is material to the purchasing decisions of the average, ordinary and reasonable consumer.

152.    **Fraudulent Business Practice**. As alleged herein, the misrepresentation by Defendant constitutes a fraudulent business practice in violation of California Business & Professions Code Section 17200.

153.    **Reasonable and Detrimental Reliance.** Plaintiff and the California Class reasonably and detrimentally relied on Defendant's representation that the Product contains 1200 mg of berberine per serving, despite the fact that the Product contains much less berberine per serving, to their detriment in that they purchased the

1  Product.

2      154.  **Reasonably Available Alternatives.** Reasonably available alternatives

3  existed that allow Defendant to further its legitimate business interests without

4  engaging in the deceptive conduct described herein. Defendant could have refrained

5  from labeling the Product as containing 1200 mg of berberine per serving and

6  alternatively marketed the true berberine content per serving. This reasonable

7  alternative allows Defendant to market its Product truthfully while protecting

8  consumers from consuming a Product that has much less berberine per serving than

9  is marketed.

10      155.  **Business Practice.** All of the conduct alleged herein occurs, and

11  continues to occur, in Defendant's business. Defendant's wrongful conduct is part of

12  a pattern or generalized course of conduct.

13      156.  **Injunction.** Pursuant to Business and Professions Code Section 17203,

14  Plaintiff and the California Class seek an order from this Court enjoining Defendant

15  from continuing its practice of labeling the Product as containing 1200 mg of

16  berberine per serving. Plaintiff and the California Class request that the Court prohibit

17  Defendant from engaging in these deceptive practices to prevent further harm to

18  consumers.

19      157.  **Causation/Damages.** Plaintiff and the California Class suffered injury

20  in fact, lost money and consumed much less berberine than they paid for as a result

21  of Defendant's fraudulent conduct. Plaintiff and the California Class paid an

22  unwarranted premium for the Product, believing it was fit for its marketed purpose

23  and contained the marketed berberine content per serving. Specifically, Plaintiff and

24  the California Class paid for a Product they reasonably believed contained 1200 mg

25  of berberine per serving. Had they known the truth, that the Product contains much

26  less than 1200 mg of berberine per serving, Plaintiff and the California Class would

27  not have purchased the Product, or would have paid substantially less for it.

28  Accordingly, Plaintiff and the California Class seek damages, restitution and/or

disgorgement of ill-gotten gains pursuant to the UCL.

**III.    "Unlawful" Prong**

158.    **Unlawful Standard.** The UCL identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

159.    **Violations of CLRA and FAL.** Defendant's labeling of the Product, as alleged herein, violates California Civil Code sections 1750, *et seq.* (the "CLRA") and California Business and Professions Code sections 17500, *et seq.* (the "FAL") as set forth in the sections regarding those causes of action.

160.    **Fraud.** Additionally, Defendant's use of the 1200 mg of berberine per serving representation despite the fact that the Product contains much less berberine per serving, to sell the Product violates California Civil Code sections 1572 (actual fraud), 1573 (constructive fraud), 1709-1710 (fraudulent deceit) and 1711 (deceit upon the public), as set forth herein.

161.    **Additional Violations.** Defendant's conduct in making the false representations described herein constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to its competitors. This conduct engenders an unfair competitive advantage for Defendant, thereby constituting an unfair, fraudulent and/or unlawful business practice under California Business & Professions Code sections 17200-17208. Additionally, Defendant's misrepresentation of material fact, as set forth herein, violates California Civil Code sections 1572, 1573, 1709, 1710, 1711 and 1770, as well as the common law.

162.    **Unlawful Conduct.** Defendant's packaging, labeling and advertising of the Product, as alleged herein, is deceptive, misleading and unreasonable, and constitutes unlawful conduct. Defendant knew, or should have known, of its unlawful conduct.

163.    **Reasonably Available Alternatives.** Reasonably available alternatives

existed that allow Defendant to further its legitimate business interests without engaging in the deceptive conduct described herein. Defendant could have refrained from labeling the Product as containing 1200 mg of berberine per serving and alternatively marketed the true berberine content per serving. This reasonable alternative allows Defendant to market its Product truthfully while protecting consumers from consuming a Product that has much less berberine per serving than is marketed.

164. **Business Practice.** All of the conduct alleged herein occurs, and continues to occur, in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

165. **Injunction.** Pursuant to Business and Professions Code Section 17203, Plaintiff and the California Class seek an order from this Court enjoining Defendant from continuing its practice of labeling the Product as containing 1200 mg of berberine per serving. Plaintiff and the California Class request that the Court prohibit Defendant from engaging in these deceptive practices to prevent further harm to consumers.

166. **Causation/Damages.** Plaintiff and the California Class suffered injury in fact, lost money and consumed much less berberine than they paid for as a result of Defendant's unlawful conduct. Plaintiff and the California Class paid an unwarranted premium for the Product, believing it was fit for its marketed purpose and contained the marketed berberine content per serving. Specifically, Plaintiff and the California Class paid for a Product they reasonably believed contained 1200 mg of berberine per serving. Had they known the truth, that the Product contains much less than 1200 mg of berberine per serving, Plaintiff and the California Class would not have purchased the Product, or would have paid substantially less for it. Accordingly, Plaintiff and the California Class seek damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

## COUNT VII

### Violation of the California False Advertising Law ("FAL")
### Cal. Bus. & Prof. Code §§ 17500, *et seq.*
### (*By Plaintiff, individually, and on behalf of the California Class*)

167.   Plaintiff, individually, and on behalf of the California Class, realleges paragraphs 1 through 61 as if fully set forth herein.

168.   Defendant's conduct constitutes deceptive or false advertising in violation of California Business and Professions Code § 17500.

169.   The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

170.   Defendant marketed, labeled and represented the Product to contain 1200 mg of berberine per serving.

171.   At the time of its misrepresentations, Defendant was either aware that the Product did not contain 1200 mg of berberine per serving, or was aware that it lacked the information and/or knowledge required to make such a representation truthfully.

172.   Defendant's descriptions of the Product are false, misleading and likely to deceive reasonable consumers, like Plaintiff and California Class members.

173.   Defendant's conduct therefore constitutes deceptive or misleading advertising.

174.   Plaintiff has standing to pursue claims under the FAL because he reviewed and relied on Defendant's packaging, labeling, advertising and representations regarding the Product when selecting and purchasing it.

175.   In reliance on the statements made by Defendant through its labeling and advertising, as well as Defendant's misrepresentation of material facts regarding the

1    Product, Plaintiff and California Class members purchased the Product.

2         176.   Had Defendant disclosed the true nature of the Product (that it does not

3    contain 1200 mg of berberine per serving), Plaintiff and California Class members

4    would not have purchased the Product or would have paid substantially less for it.

5         177.   As a direct and proximate result of Defendant's actions, Defendant

6    received ill-gotten gains and/or profits, including but not limited to remuneration from

7    Plaintiff and California Class members for the Product.

8         178.   Plaintiff and California Class members do not have an adequate remedy

9    at law because damages alone will not stop Defendant's unlawful sale of the Product,

10   or its misrepresentations. Damages will only address past injuries suffered by Plaintiff

11   and California Class members, but Defendant continues to market the Product without

12   disclosing the true nature and berberine content per serving. Therefore, only

13   injunctive relief can prevent future harm.

14        179.   Plaintiff and California Class members seek all monetary and

15   nonmonetary relief allowed by law, including restitution stemming from Defendant's

16   fraudulent business practices; declaratory relief; reasonable attorneys' fees and costs

17   under California Code of Civil Procedure § 1021.5; injunctive relief; and other

18   appropriate equitable relief.

19                              **PRAYER FOR RELIEF**

20        WHEREFORE, Plaintiff prays that this case be certified and maintained as a

21   class action and for judgment to be entered against Defendant as follows:

22        A.    Enter an order certifying the proposed Classes, designating

23              Plaintiff as Class representative and the undersigned as Class

24              counsel.

25        B.    Enter an order awarding Plaintiff and Class members their actual

26              damages, statutory damages and/or any other form of monetary

27              relief provided by law;

28        C.    Declare that Defendant is financially responsible for notifying all

CLASS ACTION COMPLAINT

33

Class members of the misbranding of its Product;

D.    Declare that Defendant must disgorge, for the benefit of the Class, all, or part of, the ill-gotten profits it received from the sale of the Product, or order Defendant to make full restitution to Plaintiff and Class members;

E.    An order awarding Plaintiff and Class members pre-judgment and post-judgment interest as allowed under the law;

F.    Grant reasonable attorneys' fees and reimbursement of all costs for the prosecution of this action, including expert witness fees; and

G.    Grant such other and further relief as this Court deems just and appropriate.

## **JURY DEMAND**

Plaintiff hereby respectfully demands a trial by jury on all issues so triable.

DATED: July 8, 2025                    By: *S/ Benjamin Heikali*

Benjamin Heikali (SBN 307466)
Katherine Phillips (SBN 353048)
**TREEHOUSE LAW, LLP**
3130 Wilshire Blvd., Suite 555
Santa Monica, CA 90403
Tel: (310) 751-5928
bheikali@treehouselaw.com
kphillips@treehouselaw.com

Melissa S. Weiner**
Ryan T. Gott**
**PEARSON WARSHAW, LLP**
328 Barry Avenue S., Suite 200
Wayzata, MN 55391
Tel: 612-389-0600

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Fax: 612-389-0610
mweiner@pwfirm.com
rgott@pwfirm.com

*Attorneys for Plaintiff and the Putative Classes*

**Pro Hac Vice Forthcoming*

CLASS ACTION COMPLAINT

## Venue Declaration Pursuant to Cal. Civ. Code 1780(d)

I, Christian Campos, declare as follows:

1.      I am the named Plaintiff in the above-captioned action and a citizen of the State of California. I have personal knowledge of the facts set forth in this declaration, and am competent to testify to the same. The matters set forth herein are true and correct to the best of my knowledge and belief.

2.      I believe that the Central District of California is the proper place for trial of this case because I reside in this District, and a substantial part of the events or omissions giving rise to the claims at issue occurred in this District.

I declare under penalty of perjury that the foregoing is true and correct, executed on _____07/01/2025_____ in Pico Rivera, California.

_____

Christian Campos